Frank TAUCHER, et al., Plaintiffs,

v.

William J. RAINER, et al., Defendants.

No. CIV. A. 97–1711(JMF).

United States District Court, District of Columbia.

March 30, 2001.

Clint Bolick, William H. Mellor, pro hac vice, Scott G. Bullock, Institute for Justice, Washington, DC, for plaintiffs.

William S. Liebman, Commodity Futures Trading Com'n, Washington, DC, for Brooksley E. Born, defendant.

William S. Liebman, Michael J. Garawski, Commodity Futures Trading Com'n, Washington, DC, for Barbara Pederson Holum, David D. Spears, John E. Tull, Jr., defendants.

Michael E. Schoeman, Schoeman Marsch & Updike, LLP, New York City, for Financial Publishers Ass'n, defendant.

Jane Elizabeth Kirtley, Reporters Committee for Freedom of the Press, Arlington, VA, for Reporters Committee for Freedom of the Press, defendant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This matter is before me for resolution of *Plaintiffs' Application for Attorney and Expert Witness Fees Pursuant to Equal Access to Justice Act* ("Plains.Mot.").

### Introduction

Plaintiffs are commodity advisory publishers and their subscribers. Defendants are the Commodity Futures Trading Commission ("CFTC") and its commissioners.

Plaintiffs brought this suit as a constitutional challenge to a CFTC regulation which required plaintiffs to register with the agency before publishing information on commodity trading. The District Court held for plaintiffs and now plaintiffs seek attorneys fees under the Equal Access to Justice Act ("EAJA").

Plaintiffs were represented by the Institute for Justice which is said to be "a nonprofit, tax-exempt public interest law center." *Plaintiffs' Brief Regarding Interpretation of the Financial Eligibility Requirements of the Equal Access to Justice Act*, Attachment A at 1. Plaintiffs signed a representation letter with the Institute which indicated that the Institute did not accept fees from its clients and covered all the financial costs of litigation. *Id.* Thus, plaintiffs never paid to the Institute any of the fees plaintiffs seek and never submitted any claim or document indicating that each plaintiff met the financial eligibility requirements of EAJA. The Institute insists that plaintiffs' eligibility is irrelevant. The Institute claims that it is the "real party in interest" because it is entirely responsible for the fees and qualifies for EAJA fees automatically as a tax exempt organization under the Internal Revenue Code 28 U.S.C.A. § 2412(d)(1)(C)(2)(B)(ii)(1994). The CFTC protests that plaintiffs are the parties who must establish their eligibility under EAJA and this case cannot go forward unless and until they do.

### Application of EAJA's Financial Eligibility Requirements to Plaintiffs' Fee Petition

■ EAJA provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action ... including proceedings for judicial review of agency action ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C.A. § 2412(d)(1)(A)(1994).

Since eligibility for EAJA fees is limited to a "prevailing party," the question presented is whether the Institute for Justice is a "party."

■ "The first tenet of statutory construction is that the 'plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.' " *R.G. Johnson Company, Inc. v. Apfel,* 994 F.Supp. 10, 13 (D.D.C.1998) (citations omitted). A "party" is defined *inter alia* as "[o]ne by or against whom a lawsuit is brought." BLACK'S LAW DICTIONARY 1144 (7th ed.1999). Clearly, the Institute for Justice is not a party as it did not *bring* this lawsuit, it *represented* plaintiffs in this lawsuit. Congress's use of that word "party," encrusted with an obvious common law meaning and history, has to denote the person or entity who sues or is sued. That word cannot possibly be tortured to mean the attorney who represents the person who sues or is sued.

■ Furthermore, the stated legislative purpose of the bill is to allow prevailing *parties* to be reimbursed for the costs of pursuing legal action against the federal government.[1] There would be no purpose in establishing specific financial eligibility requirements that parties must meet prior to being considered for an award of attorneys fees if Congress did not intend to limit the number of parties who would qualify for reimbursement. On the other hand, Congress could not have intended that parties not eligible for an award of fees under EAJA to merely retain counsel who would be eligible and thereby circumvent EAJA's financial eligibility requirements. The Institute would have to concede that, under its reading of EAJA, it would have qualified for fees in this case even though it had represented *the New York Times* and *the Wall Street Journal,* rather than the plaintiffs. It is inconceivable that Congress intended such communication giants to be entitled to EAJA fees against the government merely because the Institute represented them. The statute clearly intends, and no precedent to date has indicated otherwise, that the focus under EAJA is on plaintiffs' financial status, and not that of plaintiffs' counsel.

It is certainly true that in *Unification Church v. Immigration and Naturalization Service,* 762 F.2d 1077 (D.C.Cir.1985) the court of appeals indicated that determining EAJA eligibility among plaintiffs could be accomplished by invoking the principles the courts used to ascertain who is the real party in interest in applying the requirement of Fed.R.Civ.P. 17(a) that all cases be prosecuted in the name of the real party in interest. It is equally true that in this case there is *dicta* to the effect that a legal services organization would be likely to qualify under EAJA as a 501(c)(3) tax exempt organization. But, the *dicta* is just that—*dicta* and the discussion of the principles as to the real party in interest occurs in the context of ascertaining which of several parties to a lawsuit was the real party in interest. There is not a word in that decision which could possibly justify substituting the EAJA eligibility of the lawyer for the EAJA eligibility of the party. Moreover, plaintiffs have to take the concept of "real party in interest" as they

---

1. The purpose of the 'Equal Access to Justice Act,' as originally enacted in 1980, was to expand the liability of the United States for attorneys' fees and other expenses in certain administrative proceedings and civil actions. The primary purpose of the act was to ensure that certain individuals, partnerships, corporations, businesses, associations, or other organizations will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in securing the vindication of *their* rights. The act reduces the disparity in resources between individuals, small businesses, and other organizations with limited resources and the federal government.

H.R.Rep. No. 99–120(I)(1985)(emphasis added)

find it. A real party in interest is, first of all, a party to the lawsuit. The Institute has to admit that it could not possibly have prosecuted this case as a party and therefore could never have been the real party in interest as party plaintiff. The Institute, having been neither a party, let alone the real party in interest, when the case was prosecuted, cannot mysteriously become the real party in interest when the case enters the EAJA phase.

I therefore will not proceed until plaintiffs establish their EAJA eligibility. I hasten to add that I will not permit establishing that eligibility to become a complicated, protracted, and divisive affair. I am most sensitive to the Supreme Court's admonition that "a request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Nor do I have any desire to have plaintiffs surrender at this phase of the litigation what they won in the first part. I therefore will appeal to the better angels of counsels' nature and order them to meet and confer to see if they can arrive at a stipulation as to plaintiffs' EAJA eligibility. I expect that during these meetings plaintiffs' counsel will exchange with defendants' counsel on a confidential basis documents which establish plaintiffs' eligibility. I will sign any protective order the parties deem necessary to facilitate this exchange. If the parties cannot arrive at such a stipulation within the next 30 days, they should so advise me in writing and I will decide how to proceed from there.

### CONCLUSION

Since plaintiffs' counsel has provided insufficient information for the court to determine plaintiffs' financial eligibility for an award of attorneys fees under EAJA, plaintiffs' petition will be denied without prejudice. An order accompanies this Memorandum Opinion.

### ORDER

It is hereby,

**ORDERED** that *Plaintiffs' Application for Attorney and Expert Witness Fees Pursuant to Equal Access to Justice Act* [# 75] is **DENIED** without prejudice.

**SO ORDERED.**